Erika Birch (Bar No. 7831)
Guy Hallam (Bar No. 6101)
**STRINDBERG & SCHOLNICK, LLC**
1516 W. Hays Street
Boise, ID 83702
Telephone:   (208) 336-1788
Facsimile:   (208) 287-3708
erika@idahojobjustice.com
guy@idahojobjustice.com

Attorneys for Plaintiff

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **KEVIN FALK**,<br><br>         Plaintiff,<br><br>vs.<br><br>**HP INC., a Delaware corporation**<br><br>         Defendant. | **COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>CASE NO.<br><br>Judge |

Plaintiff Kevin Falk ("Plaintiff") complains and alleges against Defendant HP Inc. ("Defendant") as follows:

### NATURE OF CASE

1.   This is an action for damages due to deprivation of rights secured by the Age Discrimination and Employment Act ("ADEA"), the Older Workers Benefit Protection Act ("OWBPA") the Idaho Human Rights Act ("IHRA"), Americans with Disabilities Act, as amended ("ADA-AA"), and Idaho state law.

## PARTIES, JURISDICTION AND VENUE

2. Plaintiff is an individual residing in Boise, Idaho. At all times relevant to this case, he was an employee of Defendant.

3. Defendant, HP Inc., is an American technology company specializing in printers and computers and incorporated in Delaware. HP Inc. was created after Hewlett Packard Co. ("HPC") split into two corporate entities – HP Inc. ("HP") and Hewlett Packard Enterprise ("HPE"). HP is a publicly traded company on the New York Stock Exchange (HPQ), with its principal executive offices in Palo Alto, California. HP has offices worldwide including an office and campus in Boise, Idaho and employs approximately 50,000 employees.

4. This Court has jurisdiction over Plaintiff's federal claims the actions asserted herein pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over his state law claims.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) and (c).

## ADMINISTRATIVE PROCEEDINGS

6. Plaintiff filed a timely Charge of Discrimination with the Idaho Human Rights Commission ("IHRC") and the Equal Employment Opportunity Commission ("EEOC") on February 29, 2016 alleging age and disability discrimination.

7. On June 30, 2017, the IHRC issued Plaintiff a *Notice of Right to Sue*, and on July 21, 2017 the EEOC issued Plaintiff a *Notice of Right to Sue*.

8. All administrative prerequisites have been met.

## GENERAL ALLEGATIONS

9. Defendant hired Mr. Falk in the 1980s. He worked for a few years as an intern and as an industrial design assistant. Then on May 15, 1992, HP hired Mr. Falk as an industrial

2 **COMPLAINT AND DEMAND FOR JURY TRIAL**

designer at its Boise, Idaho facility. Mr. Falk worked as an industrial designer for HP for the next twenty-four (24) years.

10. Defendant terminated Mr. Falk on February 12, 2016, when he was nearly 56 years old.

11. Defendant was also well aware that Mr. Falk is disabled, having his right leg partially amputated due to a motorcycle accident approximately nine (9) years ago.

12. Director Kevin Rausch and manager Jeff Rutland became supervisors of Mr. Falk in 2015. They were his managers at the time he was terminated.

13. One of Mr. Falk's main customers was Cannon, based in Tokyo, Japan. Thus, he regularly traveled to Japan in order to meet with the client on design issues. Those in-person meetings were critical to his and the design team's success in being able to develop and design new products.

14. After Mr. Falk's amputation, and as an accommodation, HP permitted him to fly business class so he could elevate his leg during the flight to reduce swelling and pain issues.

15. In the fall of 2015, Mr. Falk was told by his direct manager, Jeff Rutland, that it was too expensive for HP to continue to accommodate Mr. Falk by paying for him to fly business class.

16. Mr. Falk, appreciating the importance of being able to travel to have face-to-face interactions with the Cannon group, made several attempts initiate the interactive process regarding HP's withdrawal of his accommodation. In fact, he even offered to use his own personal miles to upgrade his travel. All of these efforts were rebuffed, and instead, Mr. Falk was told that he would not be allowed to travel to Tokyo.

17. It was apparent from the beginning of their supervision of Mr. Falk that neither

Rutland nor Director Rausch was interested in seeing him continue to succeed at HP.

18. In fact, when discussing Mr. Falk's requests to permit him to continue to travel with accommodations to Tokyo, Rutland told him that maybe he should just leave HP and go and teach at BSU.

19. Additionally, Rausch berated Mr. Falk, telling him that he was "just lucky to have a job!"

20. In their first performance review of Mr. Falk, an accelerated, mid-year review, Rausch and Rutland downgraded his performance to "partially achieves." At the time, Rausch had been Mr. Falk's Director for approximately eleven (11) months, and Rutland had been his manager for approximately six (6) months.

21. Notably, in Mr. Falk's previous three years of reviews he was ranked as achieving expectations, and in 2011, he was rated as exceeding expectations.

22. Additionally, in this accelerated 2015 review, these managers made several biased comments that were concerning to Mr. Falk, such Rausch telling him to "stop the victim and entitlement behavior" and Rutland telling him that he should "understand the changing nature of the business and [be] like supple leopards; flexible, nimble, quick to pounce on issues."

23. In downgrading his performance, Rutland focused on clearly subjective measures of Mr. Falk's performance (the "how" not the "what" as he termed in in the review). Thus, while Mr. Falk's actual work produce and performance were "solid," he was chastised for his "attitude" and contribution to "team work."

24. Additionally, Mr. Falk's review represented that a development plan would be created as an opportunity for Mr. Falk to "turn this feedback into action steps to meet his goals." But not such plan was ever created for Mr. Falk.

25. Despite being downgraded, Mr. Falk's work product was recognized with several international awards in 2015 and 2016.

26. For example, Mr. Falk was instrumental in designing a new high speed color laser printer – the LaserJet Enterprise M553 which was released in 2015. This printer won multiple recognitions and awards including the prestigious Red Dot Best of the Best for Product Design in 2015, and the 2016 IF Award International Forum Design, and the Good Design Award for Product Design.

27. Another one of his designed products – the LaserJet Enterprise MFP M577 -- also won the RedDot award in 2016 – an award announced after Mr. Falk had been terminated by HP.

28. Defendant's managers also made age-biased comments to Mr. Falk, including but not limited to:

   a. In the fall of 2015, Rausch referred to Mr. Falk as a "design-a-saurus;"

   b. Mr. Falk was also told he was in a tough situation because he had worked for HP for "so long."

29. Upon information and belief, HP's treatment of Mr. Falk is part of a broader, company-wide movement to rid itself of older employees replacing them with younger ones.

30. For example, high level executives and/or corporate directors at HP and its predecessor corporation, HPC, made public comments about striving to have a more youthful workforce. On one occasion in the fall of 2013, Meg Whitman, former CEO of HPC and current corporate Director of HP, discussed reshaping HP's labor pyramid to have more early career people – because "if you don't have a whole host of young people who are learning . . . you will be in [for] real challenges." Ms. Whitman added that HP was "amping up our early career hiring, our college hiring."

31. Upon information and belief, HP's senior management company-wide was given specific numbers of employees to permanently lay-off, while at the same time numbers of requisitions for new hires. This plan permitted HP to terminate older, more experienced employees and then replace them with college graduates or early career hires, *i.e.,* younger employees.

32. As early as 2014, HP started enticing employees – age 55 and older—to retire early through its Phased Retirement Program. In fact, upon information and belief many older employees were subtly or not so subtly encouraged or pressured to take early retirement under threats or insinuations that if they did not do so, they would likely be a target of later work force reduction ("WFR") which provide less lucrative benefits. This was a concerted company wide effort.

33. As an employee over 55 years of age, Mr. Falk received notice of this program on several occasions, and for personal, professional and financial reasons he opted not to retire and to continue working.

34. Another early retirement package was offered to employees at the end of 2015/beginning 2016.

35. Under the program, employees electing early retirement were permitted to continue working for up to 12 months at some portion of their salary and receive on-going benefits.

36. Prior to the deadline to opt into the early retirement program, Mr. Falk received notice on February 1, 2016 that his position was being "eliminated" due to a WFR and that his last day would be February 12, 2016.

37. After the WFR and early retirement package in 2016, HP's design team was

6  **COMPLAINT AND DEMAND FOR JURY TRIAL**

largely comprised of employees in their 20s and 30s.

38. After terminating Mr. Falk, HP advertised the hiring of industrial designers at its Boise location on several occasions.

39. Indeed, upon information and belief, HP did hire industrial designers, and at least one industrial design manager, at its Boise location after it "eliminated" Mr. Falk's position. Upon information and belief, the hired employees were younger than Mr. Falk.

40. Additionally, just months before this WFR, the department had been discussing how short-handed it was.

41. Notably, when Mr. Falk was provided with his WFR paperwork at HP, which required him to sign a waiver and release of claims in order to receive all the benefits under the WFR plan, HP did not include the information required by law under the Older Workers Benefit Protection Act.

42. Specifically, HP did not inform him in writing as to "the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program." *See* 29 U.S.C. § 626 (f)(1)(H)(ii).

43. Upon information and belief, HP had a company-wide pattern and practice of not complying with its legal obligations to provide this information to employees who were subject to WFRs.

44. Upon information and belief, at the time of his termination, Mr. Falk was the second oldest employee in the Boise design group.

7 **COMPLAINT AND DEMAND FOR JURY TRIAL**

## FIRST CAUSE OF ACTION
### (Age Discrimination in violation of ADEA and IHRA)

45. Plaintiff incorporates the allegations contained in the above paragraphs as if fully set forth herein.

46. Defendant's decision to select Mr. Falk's position for elimination, and ultimately terminate him, was due to Plaintiff's age.

47. As a result of these violations, Plaintiff is entitled to recover damages for lost wages and benefits and prejudgment interest on those amounts.

48. The actions of Defendant were taken with malice or reckless indifference to Plaintiff's federally protected rights, and therefore, he is entitled to liquidated damages in an amount to be proven at trial.

49. Plaintiff is also entitled to recover attorney's fees and costs incurred in bringing this action.

## SECOND CAUSE OF ACTION
### (Violation of the Older Workers Benefit Protection Act)

50. Plaintiff incorporates the allegations contained in the above paragraphs as if fully set forth herein.

51. Defendant provided paperwork including a waiver and release of claims to Mr. Falk pursuant to his termination under the WFR.

52. That waiver and release would have required Mr. Falk to waive and release any claims for age discrimination.

53. HP failed to provide any information or documentation regarding job titles and ages of the others selected for termination under the WFR, and the ages of all individuals in the same job classification or organizational unit who are not selected for the WFR.

54. As a result of these violations, Plaintiff is entitled to recover damages for lost wages and benefits and prejudgment interest on those amounts.

55. The actions of Defendant were taken with malice or reckless indifference to Plaintiff's federally protected rights, and therefore, he is entitled to liquidated damages in an amount to be proven at trial.

56. Plaintiff is also entitled to recover attorney's fees and costs incurred in bringing this action.

### THIRD CAUSE OF ACTION
**(Failure to Provide Reasonable Accommodation and Engage in the Interactive Process in Good Faith in Violation of the ADA-AA and the IHRA)**

57. Plaintiff incorporates the allegations contained in the above paragraphs as if fully set forth herein.

58. At all times relevant hereto, Plaintiff was disabled within the meaning of the ADA-AA and the IHRA, as his amputated leg substantially limited him in the major life function of ambulating.

59. At all times relevant hereto, Plaintiff was and is a qualified individual with a disability, who was able to perform the essential functions of his position with Defendant with reasonable accommodation.

60. Defendant was aware of Plaintiff's disability.

61. Defendant removed Plaintiff's travel accommodations in late 2015.

62. Defendant failed to engage in the interactive process with Plaintiff in good faith after it removed his reasonable accommodation related to travel.

63. As a result of these violations, Plaintiff is entitled to recover damages for lost wages and benefits, plus prejudgment interest on those amounts. Plaintiff is also entitled to

compensatory damages in an amount to be proven at trial.

64. Defendant's actions were taken with malice or reckless indifference to Plaintiff's protected rights, and therefore, he is entitled to punitive damages in an amount to be proven at trial.

65. Plaintiff is also entitled to recover attorney's fees costs incurred in bringing this action.

## FOURTH CAUSE OF ACTION
### (Disability Discrimination in Violation of the ADA-AA and IHRA)

66. Plaintiff incorporates the allegations contained in paragraphs above as if fully set forth herein.

67. Defendant ultimately terminated Plaintiff's employment because of his disabilities and/or perceived disabilities and/or record of disabilities.

68. As a result of these violations, Plaintiff is entitled to recover damages for lost wages and benefits and prejudgment interest on those amounts. Plaintiff is also entitled to compensatory damages in an amount to be proven at trial.

69. The actions of Defendant were taken with malice or reckless indifference to Plaintiff's federally protected rights, and therefore, he is entitled to punitive damages in an amount to be proven at trial.

70. Plaintiff is also entitled to recover attorney's fees and costs incurred in bringing this action.

## FIFTHCAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)

71. Plaintiff incorporates the allegations contained in paragraphs above as if fully set forth herein.

72. HP had a legal duty to: (1) not discriminate against an employee on the basis of age or disability pursuant to the IHRA and other federal laws; and (2) exercise ordinary care to prevent unreasonable, foreseeable risk of harm to others.

73. HP breached its duties when it terminated and otherwise discriminated against Mr. Falk.

74. As a direct and proximate result of the HP's conduct, Mr. Falk suffered and continues to suffer emotional distress.

75. Mr. Falk physically manifested his emotional distress in one or more of the following manners: insomnia and trouble sleeping, loss of appetite and weight loss, irritability, muscle tension, anxiety, and a lower immune system which lead to more illnesses like colds and sore throats

76. It was reasonably foreseeable that Mr. Falk would suffer emotional distress by being subjected to the discriminatory conduct, including his termination, by HP as described above.

77. HP acted with malice and/or recklessly in inflicting this emotional distress on Mr. Falk.

## JURY DEMAND

78. Plaintiff, by and through counsel of record, and pursuant to Fed. R. Civ. P. 38 hereby demands a trial by jury of any issue triable of right by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against Defendant as follows:

1. For an order and judgment against Defendant for appropriate back pay, lost benefits and reimbursement for any other of Plaintiff's pecuniary losses;

11  **COMPLAINT AND DEMAND FOR JURY TRIAL**

2. For reinstatement or front pay in lieu of reinstatement;

3. For compensatory damages to compensate Plaintiff for his emotional distress, loss of enjoyment of life, and other non-pecuniary losses in amounts to be established at trial;

4. For Plaintiff's reasonable attorney's fees and costs of court;

5. For punitive damages in substantial, appropriate, and reasonable amounts;

6. For liquidated damages;

7. For an award to offset his tax burden; and

8. For such further and other relief the court deems appropriate.

DATED this 27th day of September, 2017.

**STRINDBERG & SCHOLNICK, LLC**

/s/ Erika Birch
Attorneys for Plaintiff